UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

LIBERTY MUTUAL FIRE INSURANCE COMPANY,

                Plaintiff,

    -against-

STARR INDEMNITY AND LIABILITY COMPANY,

                Defendant.
-------------------------------------------------------------------------x

Civil Action No.:
17 Civ. 5665

**COMPLAINT**

**M A D A M S/S I R S:**

        Plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY ("Liberty Mutual"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant STARR INDEMNITY AND LIABILITY COMPANY ("Starr"), alleges as follows:

## INTRODUCTION

    1.    Liberty Mutual brings the instant action seeking a declaratory judgment concerning Starr's duty to defend and indemnify Cornell University ("Cornell") and Tishman Construction Corporation of New York ("Tishman") for the action entitled <u>James Roberts v. Tishman Construction Corporation and Cornell University,</u> Index No. 151636/2014, which is pending in the Supreme Court of the State of New York, County of New York (the "Underlying Action"), under the Commercial General Liability ("CGL") policy and Excess Liability ("Excess") policies that Starr issued to Allan/Brite-Way Electrical Contractors, Inc. ("Brite-Way") as a Named Insured.

2.    Liberty Mutual also seeks a money judgment against Starr in the amount of defense costs Liberty Mutual has incurred on behalf of Cornell and Tishman, plus interest.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

4.    At all times hereinafter mentioned, Liberty Mutual was, and still is, a stock insurance company organized under the laws of the State of Wisconsin, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

5.    At all times hereinafter mentioned, Liberty Mutual was, and still is, an insurance company duly authorized to conduct business within the State of New York.

6.    Upon information and belief, at all times hereinafter mentioned, Starr was, and still is, a stock insurance company organized under the laws of the State of Texas, with its principal place of business located at 399 Park Avenue, New York, NY 10022.

7.    Upon information and belief, at all times hereinafter mentioned, Starr was, and still is, an insurance company duly authorized to conduct business within the State of New York.

## SUBSTANTIVE ALLEGATIONS

A.    **The Underlying Action**

8.    On or about November 13, 2013, James Roberts ("Roberts") commenced the Underlying Action.

2

9.      Cornell and Tishman were each named as defendants in the Underlying Action.

10.     In the Underlying Action, Roberts alleges that Cornell was the owner of the premises located at 416 East 69th Street, Cornell Medical Center, New York, New York (the "Premises").

11.     In the Underlying Action, Roberts alleges that Tishman was the general contractor in conjunction with a construction project at the Premises.

12.     In the Underlying Action, Roberts alleges that Cornell retained Tishman to act as general contractor and/or construction manager of the Premises.

13.     In the Underlying Action, Roberts alleges that on April 2, 2013, while he was lawfully working at the Premises, he sustained bodily injury.

14.     Roberts was an employee of Brite-Way, the Named Insured of Starr, and was working in the course of his employment on the 18th floor of the Premises at the time that he sustained bodily injury.

15.     In the Underlying Action, Roberts alleges violations of the Labor Law of the State of New York and Industrial Code of the State of New York against Cornell and Tishman, and seeks monetary damages for his injury.

**B.      The Subcontract Agreement**

16.     Brite-Way was formally known as Petrocelli Electric ("Petrocelli").

17.     On or about July 8, 2010, Tishman, as the "Construction Manager", and Petrocelli, as the "Contractor", entered into a subcontract agreement relating to a construction project at the Premises (the "Tishman-Petrocelli Contract").

3

18.     Cornell is identified as the "Owner" in the Tishman-Petrocelli

Contract.

19.     The Tishman-Petrocelli Contract defines Indemnitees as follows:

(iii) **"Indemnitees"** shall mean:

Tishman Construction Corporation of New York, Owner and
their respective parent companies, corporations, members
and/or partnerships and their owned, controlled, affiliated,
associated and subsidiary companies, corporations, members,
and/or partnerships and the respective agents, consultants,
principals, partners, members, servants, officers, stockholders,
directors and employees of each, and any other persons or
entities that either Construction Manager or Contractor are
required to indemnify pursuant to the Prime Contract.

20.     Regarding "Insurance", the Tishman-Petrocelli Contract provides, in

relevant part, as follows:

**INSURANCE**

8. Unless otherwise provided for by the attached Insurance
Rider, prior to commencement of any Work under this
Agreement, and until completion and final acceptance of the
Work, the Contractor and each of Contractor's subcontractors
shall, at its own expense, maintain the following insurance on
its own behalf and for the protection of the Owner, Owner's
Lender, Construction Manager and all other Indemnitees
named in this Agreement (hereinafter referred to as
"Additional Insureds"):

(a) Commercial General Liability insurance, including,
without limitation, products and completed operations and
containing no "X", "C", or "U" exclusions if excavation
and/or demolition is to be provided;

\* \* \*

All such coverage shall have limits of no less than $5,000,000
per occurrence shall be provided and maintained by insurance

4

companies with AM Best ratings of not less than A- VIII, and shall be in a form acceptable to Construction Manager. Contractor shall, upon request, provide complete copies of all such insurance policies, including all endorsements thereto to Construction Manager.  All such insurance shall be provided without deductibles or self-insured retentions.

Contractor shall deliver certificates of insurance satisfactory to Construction Manager evidencing Contractor's procurement of all required insurance within 3 days of execution of this Agreement, and prior to the performance of any Work, which certificate shall expressly identify the Additional Insureds as additional insureds.

21.    The Tishman-Petrocelli Contract contains a rider entitled "Insurance Rider", which provides, in relevant part, as follows:

## INSURANCE

* * *

Prior to commencement of any work under this Contract and until all obligations under this contract are fulfilled, the Contractor and each and every Subcontractor of the Contractor shall, at its sole expense, maintain the following insurance on its own behalf, and furnish to the Owner and/or Construction Manager, certificates of insurance evidencing same and reflecting the effective date of such coverage as follows:

The term "Contractor" and/or "Subcontractor" as used in this insurance rider, shall mean and include Contractors and Subcontractors of every tier.

* * *

B. Commercial General Liability with a combined Bodily Injury and Property Damage limit of not less than TEN Million ($10,000,000.00) Dollars per occurrence

Coverage must include the following perils

5

1. Contractual Liability for liability assumed under this Contract and all other Contracts relative to the project.

2. Completed Operations/Products Liability with a six (6) year extension beyond completion and acceptance of the project.

3. Broad Form Property Damage

4. "XC&U" Perils, where applicable

5. Personal Injury Liability (A, B, & C)

6. Independent Contractors

7. Endorsement (G2010 11/85 or its equivalent) must be furnished in conjunction with the any certificate of Insurance provided, reflecting the inclusion of the interests of Tishman Construction Corporation of New York; and their respective parent companies, corporations and/or partnerships and their owned, controlled affiliated, associated and subsidiary companies, corporations, and/or partnerships and the respective agents; consultants, principals, partners, servants, officers, stockholders, directors and employees of each and all other indemnitees named in the Contract as Additional Insureds.

8. Coverage is to be endorsed to reflect that the insurance provided is to be primary for the Contractor, Owner, Construction Manager and all other indemnitees named in the Contract.

9. Coverage is to be provided on an "occurrence" basis with carriers licensed and admitted to do business in the State of New York or otherwise acceptable to the Owner and Construction Manager.

* * *

F. Umbrella Liability insurance policies should follow the form of the underlying primary insurance policies and provide the additional insureds essentially the same coverage on an excess basis afforded by the primary insurance programs.

6

G. The Contractor shall file certificates of insurance including additional insured endorsement CG2010 11/85 or its equivalent prior to the commencement of work and/or payment with the Owner and/or Construction Manager which shall be subject to the Owner and Construction Manager's approval of adequacy of protection and the satisfactory character of the Insurer.

In the event of failure of the Contractor to furnish and maintain said insurance and to furnish satisfactory evidence thereof, the Owner and/or Construction Manager shall have the right (but not the obligation) to take out and maintain the same for all parties on behalf of the Contractor who agrees to furnish all necessary information thereof and to pay the cost thereof to the Owner and/or Construction Manager immediately upon presentation of a bill.

22.    By Assignment of Trade Contract dated April 11, 2011, Petrocelli assigned its rights and responsibilities in the Tishman-Petrocelli Contract to Brite-Way, including any and all obligations related to insurance and indemnification.

## C.    The Starr CGL Policy

23.    Upon information and belief, Starr issued a policy of insurance providing liability insurance coverage to Petrocelli and/or Brite-Way (the "Starr CGL Policy").

24.    Upon information and belief, the Starr CGL Policy had a policy period that included the date of April 2, 2013.

25.    Upon information and belief, the Starr Policy includes an endorsement entitled "Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required In Construction Agreement With You", which provides, in relevant part, as follows:

7

**A. Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    1. Your acts or omissions; or

    2. The acts or omissions of those acting on your behalf;

26.    Roberts was an employee of Brite-Way and therefore his bodily injury satisfies the requirements of the endorsement entitled "Additional Insured - Owners, Lessees Or Contractors - Automatic Status When Required In Construction Agreement With You."

27.    Upon information and belief, Cornell and Tishman qualify as additional insureds under the Starr CGL Policy for the claims alleged in the Underlying Action.

28.    Upon information and belief, the Starr CGL Policy contains an endorsement entitled "Primary and Non-Contributory Condition", which includes an "Other Insurance" provision that reads, in relevant part, as follows:

> This insurance is primary insurance as respects our coverage to the additional insured, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured is a Named Insured.

8

**D.     The Starr Excess Policy**

29.     Upon information and belief, Starr also issued a policy of insurance providing excess insurance to Petrocelli and/or Brite-Way with an additional $10,000,000 of coverage for each occurrence (the "Starr Excess Policy").

30.     Upon information and belief, coverage under the Starr Excess policy, pursuant to its terms, follows the terms, definitions, conditions, and exclusions of the applicable underlying insurance policy, the Starr CGL Policy.

31.     Upon information and belief, the Starr CGL Policy is identified as an underlying insurance policy in the declarations pages of the Starr Excess Policy.

32.     The Tishman-Petrocelli Contract required Starr's Named Insured to procure up to $10,000,000 of coverage, which Starr's Named Insured did by procuring the Starr Excess Policy.

33.     Cornell and Tishman also qualify as additional insureds under the Starr Excess Policy for the claims alleged in the Underlying Action.

34.     Upon information and belief, the "Other Insurance" provision of the Starr Excess Policy, as amended by endorsement, provides, in relevant part, as follows:

> If other insurance applies to "Ultimate Net Loss" that is also covered by this Policy, this Policy will apply excess of, and will not contribute to, the other insurance.  Nothing herein will be construed to make this Policy subject to the terms, conditions and limitations of such other insurance.  However, other insurance does not include:
>
> * * *
>
> 3. Insurance held by a person(s) or organizations(s) qualifying as an additional insured in "Underlying Insurance", but only

9

when the written contract or agreement between you and the
additional insured:

    a. Requires a specific limit of insurance than is in excess of
    the Underlying Limits of Insurance;

    b. Requires that your insurance be primary and not
    contribute with that of the additional insured; and

    c. Executed prior to the loss.

In such case as described in sub-paragraph 3. above, we shall
not seek contribution from the additional insured's primary or
excess insurance for which they are a named insured for
amounts payable under this insurance.

**E.**     **The Liberty Mutual Policy**

    35.     Liberty Mutual issued a Commercial General Liability policy, No.

TB2-611-259946-029, with a policy period of June 30, 2009 to July 1, 2014, to

Cornell University as the first Named Insured (the "Liberty Mutual Policy").

    36.     Cornell qualifies as a Named Insured under the Liberty Mutual Policy

pursuant to an endorsement entitled "BROAD FORM NAMED INSURED

ENDORSEMENT."

    37.     The Liberty Mutual Policy contains an endorsement entitled "WRAP-

UP INSURANCE PROGRAM-AMENDMENT OF COVERAGE" (the "Wrap-Up

Endorsement"), which provides, in relevant part, as follows:

    A.     Section II – Who Is An Insured is amended to include
    as a Named Insured all contractors for whom any named
    insured has agreed by written contract prior to the loss to
    provide general liability coverage under a wrap-up insurance
    program for the "designated project" and for whom the
    "Wrap-Up Administrator" has created an enrollment record...

38.    Tishman qualifies as a Named Insured under the Liberty Mutual Policy pursuant to the Wrap-Up Endorsement.

39.    Liberty Mutual has been providing and continues to provide Cornell and Tishman with a defense in the Underlying Action pursuant to the Liberty Mutual Policy.

40.    Regarding "Other Insurance", the Liberty Mutual Policy provides, in relevant part, as follows:

**4. Other Insurance**

If other valid and collectible Insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

**b. Excess Insurance**

(1) This insurance is excess over:

* * *

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and complete operations, for which you have been added as an additional insured by attachment of an endorsement.

41.    The Liberty Mutual Policy contains an applicable excess "Other Insurance" provision.

42.     Based on a comparison of the "Other Insurance" provisions in the Liberty Mutual Policy, the Starr CGL Policy, and the Starr Excess Policy, the coverage provided by the Liberty Mutual Policy to Cornell and Tishman is excess to the coverage provided by the Starr CGL Policy and Starr Excess Policy.

43.     As a result of Starr's breach of its duty to defend, Liberty Mutual has been forced to drop down and provide a defense to Cornell and Tishman for the Underlying Action.

**F.      Starr's Breach of its Duty to
Defend in the Underlying Action**

44.     By letter dated March 31, 2014, Liberty Mutual tendered Cornell's and Tishman's defense and indemnification in the Underlying Action to Starr.

45.     Starr did not respond to this tender.

46.     By letter dated May 26, 2016, Liberty Mutual, through its attorneys, Jaffe & Asher LLP, re-tendered Cornell's and Tishman's defense and indemnification in the Underlying Action to Starr.

47.     On June 1, 2016, Starr's counsel responded that he would forward the tender to Starr.

48.     On July 1, 2016, following yet another month in which Starr did not respond to the tender of Cornell and Tishman, counsel for Liberty Mutual demanded a prompt response or stated they would have no choice but to file suit.

12

49.     On July 6, 2016, a representative of Starr from the York Risk Services Group called counsel for Liberty Mutual and asked for more time to review the tender.

50.     On July 20, 2016, this Starr representative orally informed counsel for Liberty Mutual that Starr had agreed to pick up coverage without a reservation of rights for Cornell and Tishman for the Underlying Action.

51.     On July 27, 2016, counsel for Liberty Mutual requested that Starr "[confirm] its coverage position in writing."

52.     By letter dated November 11, 2016, to York Risk Services Group, Inc. ("York"), the authorized claims representative of Starr, counsel for Liberty Mutual demanded that Starr put the coverage position orally communicated on July 20, 2016, in writing, which letter included a proposed draft complaint against Starr.

53.     By letter dated December 13, 2016, York, the authorized claims representative of Starr, issued a letter addressing Starr's coverage obligations (the "Acceptance Letter").

54.     In the Acceptance Letter, Starr acknowledged the existence of the Starr CGL Policy.

55.     The Acceptance Letter states that "[a]fter careful consideration, Starr agrees to defend and indemnify Weill and Tishman as additional insureds under the Starr Policy" for the Underlying Action."

13

56.   By letter dated February 27, 2017, York, as the authorized claims representative for Starr, acknowledged the existence of the Starr Excess Policy (the "Excess Acceptance Letter").

57.   The Excess Acceptance Letter provides, in part, as follows:

> The Starr excess policy is follow form to the Starr GL policy identified above and therefore, subject to differing terms, conditions, exclusions and definitions contained in the excess policy, adopts the position taken by the company with regard to the GL coverage and accepts Weill and Tishman as additional insured under the Starr excess policy.

58.   By letter dated March 31, 2017 to York (the "March 2017 Letter"), counsel for Liberty Mutual responded to the coverage position letters issued on behalf of Starr, stating, in part, as follows:

> Your letter is not clear concerning whether Starr agrees that it will apply the Starr Excess Policy primary to the Liberty Mutual Policy for Cornell and Tishman.  If Starr insists on a priority of coverage whereby the Liberty Mutual Policy applies primary as compared to the Starr Excess Policy, then Cornell and Tishman will have to continue their third-party action against Allan Briteway Electrical Contractors, Inc. in the tort lawsuit.  In addition, because the continuance of the third-party action creates a conflict for Starr to defend both its Named Insured and Cornell and Tishman, Starr is not entitled to choose counsel and control Cornell and Tishman's defense.  See In re E. 51st St. Crane Collapse Litig., 103 A.D.3d 401, 403, 960 N. Y .S.2d 364, 366 (1st Dep't 2013); Ottaviano v. Genex Co-op., Inc., 15 A.D.3d 924,924, 790 N.Y.S.2d 791, 792 (4th Dep't 2005).  Starr's role will be simply to pay for the defense.
>
> If, however, Starr agrees to assume responsibility ON A PRIMARY BASIS for the first $12 million of coverage under Starr's primary policy and the Starr Excess Policy, without reservation of rights to disclaim coverage or to pursue recovery under the Liberty Mutual Policy, then Liberty Mutual will

14

agree that the third-party action may be discontinued and that
Starr may choose counsel for Tishman and Cornell.
Otherwise, if Starr takes the view that the Liberty Mutual
Policy applies next in line for Tishman and Cornell after Starr's
primary policy, then the status quo must be maintained.

59.   In the March 2017 Letter, attorneys' fee invoices and disbursement
invoices totaling $17,626.50 were provided to Starr for reimbursement of defense costs
incurred for Cornell and Tishman.

60.   By letter dated June 6, 2017 to York (the "June 2017 Letter"),
counsel for Liberty Mutual tendered an additional $1,773.10 in invoices to Starr for
reimbursement of defense costs incurred for Cornell and Tishman.

61.   Starr has failed and refused to respond to the March 2017 Letter and
the May 2017 Letter, and has failed to assume its coverage for Cornell and Tishman for
the Underlying Action.

62.   Starr has failed and reimburse Liberty Mutual for any costs incurred in
the defense of Cornell and Tishman the Underlying Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

63.   Liberty Mutual repeats, realleges, and reiterates each and every
allegation contained in paragraphs "1" though "62" of this Complaint as if more fully set
forth herein.

64.   Cornell and Tishman qualify as additional insureds under the Starr
CGL Policy for the claims alleged in the Underlying Action.

65.   Starr owes Cornell and Tishman a duty to defend and indemnify for
the claims alleged in the Underlying Action.

15

66.     Although duly demanded, Starr has failed and refused to provide a primary defense and indemnification to Cornell and Tishman for the claims alleged in the Underlying Action.

67.     Liberty Mutual seeks a determination of its rights with regard to the Starr CGL Policy, including a declaratory judgment that Starr was and is required to defend and indemnify Cornell and Tishman for the Underlying Action under the Starr CGL Policy, and that such coverage applies on a primary basis before coverage under the Liberty Mutual Policy applies to Cornell and Tishman.

68.     Liberty Mutual has no adequate remedy at law.

## AS AND FOR A SECOND CLAIM FOR RELIEF

69.     Liberty Mutual repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" though "68" of this Complaint as if more fully set forth herein.

70.     Starr Cornell and Tishman also qualify as additional insureds under the Starr Excess Policy for the claims alleged in the Underlying Action.

71.     Starr owes Cornell and Tishman a duty to defend and indemnify for the claims alleged in the Underlying Action, up to the limits of the Starr Excess Policy.

72.     Although duly demanded, Starr has failed and refused to provide a defense and indemnification up to the limits of the Starr Excess Policy to Cornell and Tishman for the claims alleged in the Underlying Action.

73.     Liberty Mutual seeks a determination of its rights with regard to the Starr Excess Policy, including a declaratory judgment that Starr was and is required to

16

defend and indemnify Cornell and Tishman for the Underlying Action under the Starr

Excess Policy, and such coverage applies, along with the Starr CGL Policy, on a primary

basis before coverage under the Liberty Mutual Policy applies to Cornell and Tishman.

## AS AND FOR A THIRD CLAIM FOR RELIEF

74.    Liberty Mutual repeats, realleges, and reiterates each and every

allegation contained in paragraphs "1" though "73" of this Complaint as if more fully set

forth herein.

75.    As a result of Starr's failure to acknowledge that it owes a primary

duty to defend Cornell and Tishman, Liberty Mutual has been required to pay for Cornell's

and Tishman's defense for the Underlying Action.

76.    As a result of Starr's failure to acknowledge its primary duty to

defend Cornell and Tishman for the Underlying Action, Liberty Mutual has incurred and

will continue to incur substantial attorneys' fees and other costs to defend Cornell and

Tishman.

77.    Starr failed and refused to acknowledge its primary coverage

obligation and to reimburse Liberty Mutual for costs incurred to defend Cornell and

Tishman in the Underlying Action.

78.    As a result of the foregoing, Liberty Mutual is entitled to a money

judgment against Starr in an amount equal to what Liberty Mutual has incurred and will

incur to defend Cornell and Tishman in the Underlying Action, in an amount to be

determined by the Court.

**WHEREFORE**, plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY demands judgment as follows:

1.      On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and defendant STARR INDEMNITY AND LIABILITY COMPANY with respect to their liability insurance coverage obligations for Cornell and Tishman for the Underlying Action, including a declaratory judgment that STARR INDEMNITY AND LIABILITY COMPANY is required to defend and indemnify Cornell and Tishman for the Underlying Action under the Starr CGL Policy, and that such coverage would apply on a primary basis before coverage under the Liberty Mutual Policy applies to Cornell and Tishman;

2.      On the second claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and defendant STARR INDEMNITY AND LIABILITY COMPANY with respect to their liability insurance coverage obligations for Cornell and Tishman for the Underlying Action, including a declaratory judgment that STARR INDEMNITY AND LIABILITY COMPANY is required to defend and indemnify Cornell and Tishman for the Underlying Action under the Starr Excess Policy, and that such coverage would apply on a primary basis before coverage under the Liberty Mutual Policy applies to the Cornell and Tishman;

3.      On the third claim for relief, a money judgment in favor of plaintiff LIBERTY MUTUAL FIRE INSURANCE COMPANY and against defendant STARR

18

INDEMNITY AND LIABILITY COMPANY in an amount to be determined by the Court;

and

    4.    Granting plaintiff LIBERTY MUTUAL FIRE INSURANCE

COMPANY recovery of the costs and disbursements of this action, together with such

other and further relief as this Court deems just and proper.

Dated:  New York, New York
        July 25, 2017

                Yours, etc.,

                JAFFE & ASHER LLP

                By: _____

                  Marshall T. Potashner, Esq.
                Attorneys for Plaintiff
                LIBERTY MUTUAL FIRE
                INSURANCE COMPANY
                445 Hamilton Avenue, Suite 405
                White Plains, New York 10601
                (212) 687-3000